# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| LIPMAN-TEXAS, LLC; et al., | |
|     Plaintiffs, | |
| v. | Civil Action No. 1:24-cv-05760-SCJ |
| CUSTOMIZED DISTRIBUTION, LLC; et al. | |
|     Defendants. | |

## INDIVIDUAL DEFENDANTS' RESPONSE IN OPPOSITION TO MOTIONS FOR LEAVE TO INTERVENE

Individual Defendants Richard P. DiStasio ("DiStasio"), Daniel Plattner ("Plattner"), Benjamin Escobar ("Escobar"), and Jerald Hayes ("Hayes") (collectively, "Individual Defendants"), by and through their undersigned counsel, hereby file this *Response in Opposition* to the pending Motions for Leave to Intervene (the "Motions to Intervene") filed by Proposed Intervenors Your Way Fresh, LLC ("Your Way") [*see* ECF No. 32], and Cavendish Farms, Inc. ("Cavendish") and Food Service Systems, LLC ("FSS") [*see* ECF No. 35] (Your Way, Cavendish, and FSS collectively referred to as the "Intervenors"). Based upon unique circumstances that do not exist in typical vendor intervention scenarios under the Perishable Agricultural Commodities Act ("PACA"), intervention is not proper in this action. In support of this opposition, Individual Defendants respectfully show

this Court as follows:

1. The Motions to Intervene are untimely, taking into consideration Individual Defendants' pending Rule 12(b)(1) Motion to Dismiss for lack of standing [*see* ECF No. 30]. The Rule 12(b)(1) Motion presents a threshold jurisdictional issue that must be decided prior to a ruling on the Motions to Intervene. If the Court lacks jurisdiction over Individual Defendants, then the Court is also unable to grant intervention as against Individual Defendants. Thus, either denial or a stay of the Motions to Intervene is warranted until a decision is entered on the pending Rule 12(b)(1) Motion;

2. The claims asserted in the Intervenors' proposed Complaints in Intervention [*see* ECF Nos. 32–2 and 35–1] do not arise out of the same transaction or occurrence as the main action. Each Intervenor has separate claims based upon separate contracts, which involve separate and distinct facts and require separate and distinct analysis. Moreover, Intervenors *seek to bring claims against an additional defendant that is not a named defendant in the main action*—that is, HCPI CDI Holdings LLC ("HCPI"). [*See* ECF Nos. 32–2 at 3 ¶ 7 and 35–1 at 4 ¶ 2(i)]. The addition of a new defendant further calls into question (*i*) whether the Intervenors' claims relate to the transaction that is the subject of the *main* action, which is

required for intervention as a right (*see* FED. R. CIV. P. 24(a)); and also whether Intervenors' claims share a common question of fact with the main action, which is required for permissive intervention (*see* FED. R. CIV. P. 24(b)); and

3. *Intervenors' make improper allegations and references in their Complaints in Intervention to Individual Defendants' directors and officers insurance policy* ("D&O Policy"), which are highly prejudicial and warrant denial of intervention by right, as well as permissive intervention. [ECF No. 32–2 at 23-24, ¶¶ 87-90; and ECF No. 35–1 at 27, ¶¶ 134-140].

## I. __INTRODUCTION__

The Individual Defendants would not generally oppose the intervention of other purported PACA vendors to ensure fair PACA trust asset distribution consistent with past Orders by this Court granting intervention.[1] However, in the instant case, there are issues with the Motions to Intervene and the Complaints in Intervention that warrant either the denial of the Motions to Intervene; a stay pending resolution of Individual Defendants' Motion to Dismiss; the removal of Individual Defendants from the Complaints in Intervention; or the removal, redaction, and/or striking of allegations in the Complaints in Intervention that improperly refer to Individual

---

[1] *See, e.g., Hollar & Green Produce Co., Inc., et al. v. Sunbelt Produce Distribs., Inc., et al.*, No. 1:23-cv-05462-SCJ (N.D. Ga.), Dkt. #19, 60, and 68 (orders granting *unopposed* motions to intervene).

Defendants' D&O Policy.

First, Individual Defendants' Rule 12(b)(1) Motion to Dismiss [ECF No. 30] raises a threshold jurisdictional issue that requires a ruling prior to consideration of the pending Motions to Intervene. It is thus appropriate for this Court to rule on the Individual Defendants' Motion to Dismiss *before* subjecting Individual Defendants to claims by Intervenors that suffer from the same fatal jurisdictional flaws as the claims in the main action.

In their Motion to Dismiss, Individual Defendants demonstrated that this Court lacks subject-matter jurisdiction for two principal reasons:

(1) Three of the four Individual Defendants (*i.e.*, Escobar, DiStasio, and Plattner) against whom Plaintiff and Intervenors assert secondary PACA liability are no longer affiliated with Customized Distribution, LLC ("CDI"), the purported PACA buyer. The other Individual Defendant (*i.e.*, Hayes) is merely an employee of CDI who does not have any decision-making authority over the use of CDI assets.

(2) No Individual Defendant controlled CDI funds at the relevant time periods in which the alleged PACA amounts became due; and each Individual Defendant currently lacks the ability to disburse, dissipate, or in any way control CDI's funds.

[*See generally*, ECF No. 30]. Indeed, because Plaintiffs lack standing as to their

claims against Individual Defendants, the Court lacks subject-matter jurisdiction as to Individual Defendants. To allow intervention prior to ruling on the pending Individual Defendants' Motion to Dismiss would cause unnecessary burden, duplication, and expense upon the Court and Individual Defendants.

Second, Intervenors allege separate and distinct contracts with CDI that require separate analysis and discovery. Third, Intervenors seek to add a new party defendant (HCPI)—that is not a named defendant to the main action. The separate and distinct contracts and the inclusion of a new named defendant in the Complaints in Intervention removes the subject of Intervenors' claims beyond the common facts of the main action, thereby excluding intervention.

Lastly—and the primary reason for Individual Defendants' opposition— Intervenors improperly refer to the existence of insurance coverage in the Complaints in Intervention. [ECF No. 32–2 at 23-24, ¶¶ 87-90; and ECF No. 35–1 at 27, ¶¶ 134-140]. References to insurance is statutorily prohibited in Georgia except in rare circumstances,[2] is highly prejudicial, and may negatively influence this case. Thus, if intervention is permitted, Individual Defendants respectfully request that the Complaints in Intervention not be permitted for filing without amendment, striking, and/or redaction of the improper references to the D&O Policy.

---

[2] *See* O.C.G.A. § 24-4-411.

## II. **FACTUAL BACKGROUND**

Individual Defendants acknowledge and agree that both Plaintiffs in the main action as well as Intervenors claim to be purported unpaid suppliers of perishable agricultural goods provided to CDI, that collectively seek to enforce the trust provisions provided in PACA. [*See* ECF Nos. 23, 32, 35]. However, each of the claims are separate and distinct, as shown:

Main action [ECF No. 23]: Plaintiff Lipman-Texas, LLC ("Lipman") alleges it contracted with and provided goods to CDI between August 13, 2024 and October 9, 2024, totaling $255,608.84, for which it has not been paid by CDI. [ECF No. 23 ¶¶ 7-10]. According to Lipman's October 24, 2024 invoice, it appears payment may have been due by CDI upon receipt of each delivery. [ECF No. 3–3 at 37-38]. Plaintiff FreshPoint Atlanta, Inc. ("FreshPoint") alleges it contracted with and provided goods to CDI between December 22, 2023 and October 4, 2024, totaling $239,681.76, for which it has not been paid. [ECF No. 23 ¶¶ 7-10]. According to the invoices provided by FreshPoint, payment was due by CDI three-weeks after each invoice date, with the last payment due October 25, 2024. [ECF No. 3–5 at 37-55].

Your Way's action [ECF No. 32–2]: Your Way alleges it contracted with and provided goods to CDI between September 5, 2024 and October 6, 2024, totaling $700,483.84, and that $402,574.00 of the total amount qualifies for

PACA protection for which it has not been paid by CDI. [ECF No. 32–2 ¶¶ 7-12]. The supporting invoices ranging from September 11, 2024 through October 7, 2024 require payment within 21 days, with the last payment due October 28, 2024. [ECF No. 32–4 at 10-36]. Your Way's Complaint in Intervention does not provide a copy of the operative contract with CDI.

Cavendish and FSS's action [ECF No. 35–1]: Cavendish alleges that it contracted with and provided goods to CDI between September 16, 2024 and October 8, 2024 totaling $339,774.98, for which it has not been paid by CDI. FSS alleges that it contracted with and provided goods to CDI between September 18, 2024 and September 26, 2024 totaling $86,139.20, for which it has not been paid by CDI. [ECF No. 35-1 ¶¶ 9-16]. The Cavendish and FSS Complaint in Intervention is not accompanied by any invoices, declarations, or the operative contracts with CDI.

Each of the claims rely upon separate and distinct contracts with CDI, different deliverables, different issues regarding the deliverables and amounts subject to PACA, different payment due dates and terms, and different collection terms.

Generally, under PACA, primary liability attaches to the buyer of perishable goods. Only if the assets of the buyer are insufficient to satisfy the PACA liability may secondary liability, under certain circumstances, attach to those individuals or

entities that exercise sufficient control over the PACA trust funds of the buyer or had a role in causing the breach of trust by the buyer. *A&A Concepts, LLC v. Fernandez*, 107 F.4th 478, 483-84 (5th Cir. 2024); *see also Alpine Fresh, Inc. v. Taisan Corp.*, No. 1:05-cv-01560-WBH, 2008 WL 11404527, at *2-3 (N.D. Ga. May 13, 2008).

Plaintiffs in the main action seek primary liability against CDI (the purported contracting buyer) and secondary liability (or transferee liability) against Wheaton Bank & Trust Company, N.A., ABL Opco LLC; and BlackBriar Advisors LLC (the purported entities that control CDI's PACA trust assets), as well as further secondary liability against Individual Defendants. [*See* ECF No. 23]. Whereas Intervenors proposed Complaints in Intervention *add an additional party defendant* that is not named in the main action (*i.e.*, HCPI). [ECF No. 32-2 at ¶¶ 2.c., 5.i., and 84-90; ECF No. 35-1 at ¶¶ 2(i), 5, and 131-140].

In addition, the Complaints in Intervention unnecessarily and improperly lodge allegations that include references to the D&O Policy obtained by HCPI in June 2021 and seek a declaration by this Court regarding same. [ECF No. 32-2 at 23-24, ¶¶ 87-90; and ECF No. 35-1 at 27-28 ¶¶ 134-140].

For instance, Your Way contends that the D&O Policy was acquired with funds from the sale of PACA produce subject to the PACA trust; is "impressed with the PACA statutory trust in favor of Intervening Plaintiff"; that CDI holds PACA trust assets that include "proceeds obtained from the" D&O Policy; and seeks a

declaration that the D&O Policy is subject to the PACA trust. [ECF No. 32-2 at 23-24, ¶¶ 87-90]. Your Way goes even further and improperly includes a copy of the D&O Policy declarations as an exhibit to its Complaint in Intervention. [ECF No. 32-4 at pp. 40-46].

Similarly, Cavendish and FSS allege that the D&O Policy remains in effect; identifies HCPI's address as the same address as CDI; was acquired or maintained with PACA trust assets; and likewise seek a declaration that the D&O Policy and its proceeds are PACA trust assets. [ECF No. 35-1 at 27-28 ¶¶ 134-140].

The purpose for the references to the D&O Policy is not readily clear other than to unfairly prejudice the Individual Defendants.

Prior to the filing of the subject Motions to Intervene [ECF Nos. 32 and 35], Plaintiffs filed their First Amended Complaint [ECF No. 23], an Ex Parte Motion for Temporary Restraining Order [ECF No. 3], and a Motion for Preliminary Injunction [ECF No. 4]. The Court issued and extended a Temporary Restraining Order restraining Defendants from dissipating CDI assets and postponed a preliminary injunction hearing regarding same. [ECF Nos. 6, 15, 21, hearing cancelled by 1/19/25 notice, to be rescheduled]. Individual Defendants timely submitted their Rule 12(b)(1) Motion to Dismiss on January 20, 2025. [ECF No. 30]. Not all Defendants have been served and the time for some Defendants to appear has not yet passed. Thus, the Court does not yet know if jurisdictional issues exist regarding

other defendants.

### III. ARGUMENT AND CITATION TO AUTHORITY

**A. The pending jurisdictional challenge prohibits intervention**.

Due to the jurisdictional nature of standing and subject matter jurisdiction raised by the Individual Defendants' Rule 12(b)(1) Motion to Dismiss, the dispositive motion must be ruled upon before the consideration of the Motions to Intervene. To be sure, Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." It is accordingly well-established that subject-matter jurisdiction is a preliminary matter that **must** be decided before other matters. Indeed, "[t]hat th[e] Court must first satisfy itself of [its] own jurisdiction is *a rule without exception*." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (emphasis added). This is because, if the court lacks "subject matter jurisdiction, the court is powerless to proceed." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), *accord Ex parte McCardle,* 74 U.S. 506, 514 (1868). As such, the Court is unable to permit intervention if it lacks jurisdiction over the Individual Defendants. *See Fuller v. Suntrust Banks, Inc.*, No. 1:11-CV-00784-ODE, 2012 WL 12869318, at *3 (N.D. Ga. Oct. 30, 2012) (denying a motion to intervene because the plaintiff lacked standing).

Accordingly, it is appropriate for this Court to rule on Individual Defendants'

Rule 12(b)(1) Motion to Dismiss [ECF No. 30] prior to considering the Motions to Intervene (ECF Nos. 32 and 35].

**B. Intervention is improper either by right or by permission.**

Federal Rule of Civil Procedure 24 provides two avenues for intervention:

> **(a) Intervention of Right.** On *timely* motion, the court must permit anyone to intervene who:
>
> > **(1)** is given an unconditional right to intervene by a federal statute; or
> >
> > **(2)** claims an interest relating to the property or transaction *that is the subject of the action*, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> **(b) Permissive Intervention.**
>
> > **(1) In General.** On *timely* motion, the court may permit anyone to intervene who:
> >
> > > **(A)** is given a conditional right to intervene by a federal statute; or
> > >
> > > **(B)** has a claim or defense *that shares with the main action a common question of law or fact.*

FED. R. CIV. P. 24 (italics added).

1. Intervenors' do not qualify for intervention by right.

The Motions to Intervene are untimely, the Complaints in Intervention do not share an interest in the transaction that is the subject of the main action, and Intervenors' interests are not so situated that they cannot protect their interests absent intervention.

First, the Motion to Intervene are not timely considering the Individual Defendants' pending Motion to Dismiss [ECF No. 30]. It would be improper to grant intervention prior to ruling on the Individual Defendants' Rule 12(b)(1) Motion to Dismiss. *Supra* at 10. The pending Rule 12(b)(1) Motion to Dismiss warrants either denial of intervention, or a stay of a ruling on the Motions to Intervene until a determination on the Motion to Dismiss.

Secondly, the differences between the main action and the Complaints in Intervention are significant and exclude intervention. There are three specific differences between the main action and the Intervenors' actions.

a. Intervenors have separate and distinct contracts with CDI, provided different deliverables, involve different issues regarding the deliverables and amounts subject to PACA, involve different payment due dates and terms, as well as different collection terms. *Supra* at 6-7. Thus, the Intervenors do not claim an interest in the *transaction* that is the subject of the main claim. Rather, the Intervenors and the Plaintiffs in the main action seek recovery of separate amounts due from CDI under separate and distinct contracts that require separate analysis. It is not uncommon for a company to have multiple creditors vying for collection, but that does not give rise to a right for all those creditors to intervene in one lawsuit.

b. The Intervenors seek recovery against a defendant not named in the main action (*i.e.*, HCPI). *Supra* at 8. The addition of an additional defendant

further removes the Intervenors claims away from the same subject matter of the main action and would further unnecessarily expand the litigation and confuse the issues.

c. Lastly, the Intervenors seek a declaration from the Court regarding whether a D&O Policy is a PACA trust asset. *Supra* at 8-9. No such issue exists in the main action. Again, aside from the improper reference to the D&O Policy, the request for a declaration from the Court and the inclusion of D&O Policy allegations moves the Intervenors' claims yet even further away from the subject matter of the main action thus warranting denial of intervention.

Thirdly, while the Plaintiffs and the Intervenors all seek a pro-rata share of CDI's PACA trust assets; the Intervenors have not shown beyond mere conclusory unsupported allegations that the disposition of the main action "*may as a practical matter impair or impede the movant's ability to protect its interest*." FED. R. CIV. P. 24(a)(2) (emphasis added).

2. <u>Intervenors do not qualify for permissive intervention</u>.

In addition to the reasons why Intervenors cannot intervene as a matter of right, the exercise of discretion in consideration of the prejudice to the Individual Defendants also warrants denial of permissive intervention. The Individual Defendants will be prejudiced by having to file duplicative Rule 12(b)(1) motions to the Complaints in Intervention and incur unnecessary costs associated with same.

Likewise, the Court will be burdened by duplicative motions, briefings, and hearings. Whereas, if the Court were to grant the Individual Defendants' Rule 12(b)(1) Motion to Dismiss in advance of permitting intervention, the Intervenors could submit revised proposed Complaints in Intervention that remove the Individual Defendants and contain allegations and claims that are tailored only to those entities or individuals over which the Court has jurisdiction.

Similarly, the separate and distinct claims by the Plaintiffs and the Intervenors further complicates and confuses the issues and would unnecessarily expand the scope of the litigation and prejudice the Defendants. If intervention is permitted, the Court would have five separate Plaintiffs, each with separate claims, contracts, and damages at issue, as well as separate written discovery and depositions that the parties would have to conduct. It is difficult to fathom how a jury would be able to sort out and keep track of the various claims, damages, and defenses.

Lastly—but certainly not the least of the concerns—is *the significant prejudice* that would be imposed upon the Individual Defendants should the Intervenors be permitted to file the Complaints in Intervention that contain highly prejudicial and improper references to the D&O Policy.

In Georgia, it is generally improper—and statutorily prohibited—to reference the availability of insurance in a case due to its highly prejudicial nature and influence on the outcome of a case, unless it is directly relevant to an issue in the

case and its probative value outweighs its prejudicial effect. O.C.G.A. § 24-4-411; *see also Woods v. Heath*, 903 S.E.2d 705, 710 (Ga. Ct. App. 2024) (noting O.C.G.A. § 24-4-411 is "the codification of the well-settled law in Georgia that the erroneous injection of insurance into a tort case is grounds for a mistrial '[b]ecause of its irrelevance and prejudicial value[.] Such evidence is highly prejudicial and it can influence the entire case, no matter which side attempts to introduce it.'") (citing, *Denton v. Con-Way So. Express*, 402 S.E.2d 269 (Ga. 1991), *disapproved on other grounds by Grissom v. Gleason*, 418 S.E.2d 27 (Ga. 1992) (holding, "The **strict exclusion** of [evidence of insurance] is due ... chiefly to the assumption that a knowledge of the fact of insurance against liability **will motivate the jury to be reckless in awarding damages to be paid, not by the defendant, but by a supposedly well-pursed and heartless insurance company** that has already been paid for taking the risk.") (citations and punctuation omitted) (emphasis added)). One such permissible situation in which insurance may be injected into a case is a personal injury direct action against a motor carrier as authorized by O.C.G.A. § 40-1-112.

Here, the Intervenors have not provided any legitimate relevant and probative non-prejudicial basis upon which to allow the references to the D&O Policy in Complaints in Intervention, and the highly prejudicial effect of the references is well-established through prior case decisions.

# V. CONCLUSION

Individual Defendants' pending 12(b)(1) Motion to Dismiss cautions against intervention. Moreover—and making this opposition to intervention in a PACA lawsuit unique—the proposed Complaints in Intervention improperly contain distinct claims that are not the subject of the claims in the main action, add a defendant that is not a party to the main action, and improperly make specific references to and seek a declaration regarding the applicability of a director and officers liability insurance policy under which Individual Defendants are being provided a defense. These differences, and especially the improper and highly prejudicial references to insurance, render intervention impermissible absent revisions to the proposed intervenor complaints.

Respectfully submitted this 31st day of January, 2025.

*/s/ Scott Eric Anderson*
Scott Eric Anderson
Georgia Bar No. 105077
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Scott.Anderson@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Individual Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the within and foregoing **INDIVIDUAL DEFENDANTS' RESPONSE IN OPPOSITION TO MOTIONS FOR LEAVE TO INTERVENE** has been prepared in compliance with Local Rule 5.1(C) in Times New Roman, 14-point font. I further certify that the foregoing is limited in length to twenty-five (25) pages and complies with all Instructions for Cases assigned to the Honorable Steve C. Jones.

This 31st day of January, 2025.

*/s/ Scott Eric Anderson*
Scott Eric Anderson
Georgia Bar No. 105077
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Scott.Anderson@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Individual Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **INDIVIDUAL DEFENDANTS' RESPONSE IN OPPOSITION TO MOTIONS FOR LEAVE TO INTERVENE** to the Clerk of Court using the CM/ECF filing system, which will automatically send electronic mail notification of the same to all counsel of record.

This 31st day of January, 2025.

*/s/ Scott Eric Anderson*
Scott Eric Anderson
Georgia Bar No. 105077
Cameron N. Regnery
Georgia Bar No. 333041

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(T): 770-818-0000
(F): 833-330-3669
Scott.Anderson@fmglaw.com
Cameron.Regnery@fmglaw.com

*Attorneys for Individual Defendants*
